UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __2/1/2021__

---

NEW YORK LIFE INSURANCE
COMPANY,

                   Plaintiff,

        -against-

KIM BROWN, MARCUS BROWN, and
RODNEY NESBIT,

                  Defendants.

1:19-cv-09437-MKV

OPINION AND ORDER
GRANTING MOTION
FOR SUMMARY JUDGMENT

---

MARY KAY VYSKOCIL, United States District Judge:

      Plaintiff New York Life Insurance Company ("New York Life") commenced this interpleader action against Defendants Kim Brown, Marcus Brown, and Rodney Nesbit to determine the rightful beneficiary of the proceeds of Laverne Denise Brown's life insurance policy (the "Policy").[1] (Compl. [ECF No. 1].) On consent of all parties, the Court dismissed New York Life from the action after it deposited the Policy proceeds of $50,000 with the Court. (Order Discharge & Dismissal [ECF No. 30]; *see* Order Deposit Death Benefit & Related Relief [ECF No. 15].) Before the Court is Kim's unopposed Motion for Summary Judgment seeking the entirety of the Policy proceeds. (Notice of Mot. [ECF No. 31].) For the reasons discussed below, the Court GRANTS the Motion.

---

[1] The actors relevant to this opinion are Laverne Brown, Kim Brown, Marcus Brown, Rodney Nesbit, and Roxanne Dawson. The Court generally refers to them by their first names.

## BACKGROUND

### A.  Factual Background[2]

In September 2015, New York Life issued the Policy to Laverne with a $50,000 death benefit.  (56.1 ¶ 1; *see* Decl. Eric Dinnocenzo Ex. E [ECF No. 36-5].)  Laverne was the owner and insured.  (56.1 ¶ 1; *see* Decl. Eric Dinnocenzo Ex. E, at 2.)  The Policy lists as beneficiaries Rodney and Marcus, entitled to thirty percent and seventy percent, respectively.  (Decl. Eric Dinnocenzo Ex. E, at 2.)  The Policy provides that to "designate a beneficiary or change a beneficiary designation . . . WE [New York Life] must be given a completed written request from the OWNER on a form satisfactory to US [New York Life]."  (Decl. Eric Dinnocenzo Ex. E, at 9.)

In February 2019, Laverne, who was battling esophageal cancer, asked to stay with Kim, her sister, at Kim's apartment in the Bronx, New York, after the passing of their father.  (56.1 ¶¶ 2–3; Aff. Kim Brown ¶¶ 2, 4.)  Kim agreed.  (56.1 ¶ 3; Aff. Kim Brown ¶¶ 4.)  At the time, neither Marcus, Laverne's son, nor Rodney, Laverne's husband, offered Laverne a place to stay.  (Aff. Kim Brown ¶ 5.)  In December 2018, Rodney was arrested and an order of protection was issued as a result of domestic violence between him and Laverne.  (56.1 ¶ 4; Aff. Kim Brown ¶ 5; *see* Decl. Eric Dinnocenzo Ex. J [ECF No. 36-10].)

In February 2019, Laverne advised Kim that she wanted Kim to be the beneficiary of the Policy because Kim was kind enough to care for her while Rodney and Marcus declined to do so.  (56.1 ¶ 9; Aff. Kim Brown ¶ 7.)  Laverne and Kim, together, called New York Life inquiring how

---

[2] Unless otherwise noted, the following facts are adduced from Kim Brown's Rule 56.1 Statement (Kim Brown 56.1 ("56.1") [ECF No. 37]); the Affidavit of Kim Brown (Aff. Kim Brown [ECF No. 33]); and the Declaration of Eric Dinnocenzo (Decl. Eric Dinnocenzo [ECF No. 36]). Because Defendants-Crossclaimants Marcus Brown and Rodney Nesbit did not file Rule 56.1 Counterstatements or otherwise oppose Kim Brown's Rule 56.1 Statement, these facts are deemed admitted. *See* Local Rule 56.1(c); *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (noting that "the failure to respond [to a Rule 56.1 Statement] may allow the district court to accept the movant's factual assertions as true"); *accord Iantosca v. Elie Tahari, Ltd.*, No. 19-cv-04527 (MKV), 2020 WL 5603538, at *1 n.1 (S.D.N.Y. Sept. 18, 2020).

to make Kim the Policy beneficiary.  (56.1 ¶ 7; Aff. Kim Brown ¶ 7; *see generally* Decl. Eric Dinnocenzo Ex. H [ECF No. 36-8].)  The New York Life representative advised them of the paperwork required to accomplish this.  (Aff. Kim Brown ¶ 8; Decl. Eric Dinnocenzo Ex. H, at 5:13–7:15.)  Laverne then submitted a beneficiary change form dated February 19, 2019, designating Kim as the full beneficiary in addition to two forms dated March 5, 2019, and April 2, 2019, transferring ownership of the Policy to Kim.  (56.1 ¶¶ 11, 18; Aff. Kim Brown ¶¶ 9–10; *see* Decl. Eric Dinnocenzo Exs. F, G [ECF Nos. 36-6 to 36-7].)  Upon receipt and review of the forms, New York Life changed the Policy beneficiary and transferred ownership of the Policy to Kim, confirming the changes in a letter dated April 10, 2019, sent to Kim.  (56.1 ¶¶ 13–14, 19; Aff. Kim Brown ¶ 10; *see* Decl. Eric Dinnocenzo Ex. K [ECF No. 36-11].)

Laverne lived with Kim until she entered hospice care at Calvary Hospice toward the end of April 2019.  (56.1 ¶ 21; Aff. Kim Brown ¶¶ 13–14.)  On April 29, 2019, when Marcus was with her, Laverne called New York Life disputing the recent changes to her policy.  (Aff. Kim Brown ¶ 14.)  As alleged by New York Life in the Complaint, Laverne stated that when she and Kim called New York Life on February 19, 2019, "due to her illness she was medicated and 'not in her right mind.'"  (Compl. ¶ 17.)  Laverne further stated that "she did not want to transfer ownership of the Policy to Kim Brown[,] that she wanted ownership of the Policy returned to her . . . [and] that she asked Kim Brown to change the ownership back to her, but [Kim] refused."  (Compl. ¶ 17.)  Consequently, New York Life initiated a fraud investigation.  (Compl. ¶ 17.)  On April 30, 2019, Kim called New York Life requesting that additional security be placed on the Policy with greater restrictions on future changes, including those made by Laverne.  (Compl. ¶ 18.)

Laverne died on May 7, 2019.  (56.1 ¶ 1; Aff. Kim Brown ¶ 3.)  According to the Complaint, by letter dated May 10, 2019, Marcus challenged the change of beneficiary made on February 19, 2019, claiming Laverne "never wanted that."  (Compl. ¶ 21; *see* Compl. Ex. K [ECF

No. 1-11].)  By claim form dated May 13, 2019, Kim asserted a claim for the Policy proceeds.

(Compl. ¶ 23; *see* Compl. Ex. L [ECF No. 1-12].)  By notarized letter dated June 3, 2019, Roxanne

Dawson, who claimed to know Laverne for about five years through her relationship with Marcus,

alleged that at the time of the beneficiary change made on February 19, 2019, Laverne's

medications were "altering her mental status."  (Compl. ¶ 24; *see* Compl. Ex. M [ECF No. 1-13].)

The letter alleges the following regarding the relationship between Laverne and Kim:

> Laverne warned me not to trust Kim.  She told me Kim is trying to butter
> us up, me & Marcus, so she can take advantage.  She said Kim purposefully
> admitted her to the hospital because she didn't want Laverne living with
> her.  Laverne also said Kim was cashing her disability checks without her
> permission, she used Laverne's debit card to pay her bills without Laverne's
> permission + she refused to bring Laverne her cellphone + other belongings
> to the hospital. . . .  [Laverne] informed me that Kim still has not + refused
> to bring Laverne her cellphone + belongs.  Laverne begged me to help her
> get her belongings + that she didn't ever want to see Kim again. . . .  There's
> no way Laverne made Kim the beneficiary while in sound mind.

(Compl. Ex. M.)  Finally, Rodney asserted a claim for the policy proceeds by undated letter faxed

to New York Life.  (Compl. ¶ 25; Compl. Ex. N [ECF No. 1-14].)

## B.  Procedural Background

New York Life commenced this interpleader action on October 11, 2019, "to avoid being

vexed and harassed by conflicting and multiple claims."  (Compl. ¶ 32.)  New York Life claims

that "[u]nder the circumstances, [it] cannot determine factually or legally who is entitled to the

[Policy proceeds]" (Compl. ¶ 26) and that "[a]s a mere stakeholder, [it] has no interest . . . in the

[Policy proceeds] due" (Compl. ¶ 29).  Accordingly, New York Life "respectfully requests that

this Court determine to whom said [proceeds] should be paid."  (Compl. ¶ 29.)  On October 29,

2019, the Court (Rakoff, *J.*) entered an Order directing New York Life to distribute to the Clerk

of Court a check equal to the sum of the proceeds of Laverne's life insurance policy ($50,000) plus

applicable interest, if any, to be deposited into an interest-bearing account.  (Order Deposit Death Benefit & Related Relief ¶¶ 1–2.)

On December 4, 2019, Kim filed an Answer asserting crossclaims against Marcus and Rodney that she is the rightful beneficiary of the Policy.  (Kim Brown's Answer & Crossclaims [ECF No. 20].)  Shortly thereafter, Rodney and Marcus filed nearly identical Answers asserting several affirmative defenses to Kim crossclaims: (1) improper designation as owner and beneficiary under the policy; (2) the doctrine of unclean hands; (3) that Kim unduly influenced or coerced Laverne to designate her as the beneficiary and transfer ownership of the policy to her; and (4) that Laverne lacked the requisite mental capacity to make changes to her account.  (Marcus Brown's Answer & Crossclaims ¶¶ 43–48 [ECF No. 24]; Rodney Nesbit's Answer & Crossclaims ¶¶ 42–47 [ECF No. 22].)  The two also asserted crossclaims against Kim for (1) undue influence, duress, and coercion; and (2) fraud.  (Marcus Brown's Answer & Crossclaims ¶¶ 49–80; Rodney Nesbit's Answer & Crossclaims ¶¶ 48–70.)

This case was reassigned to me on February 6, 2020.  On February 12, 2020, the Court entered an Order, on consent of all parties, discharging New York Life from any and all liability to the Defendants relating in any way to the Policy, enjoining Defendants from making any claims against New York Life with respect to the Policy, and dismissing New York Life from this action with prejudice and without fees or costs to any party.  (Order Discharge & Dismissal.)

On March 2, 2020, Kim filed a Motion for Summary Judgment.  (Notice of Mot. [ECF No. 31].)  In support of the Motion, she filed a Rule 56.1 Statement (56.1 [ECF No. 37]); a memorandum of law (Brief Supp. Mot. Summ. J. [ECF No. 34]); the Affidavit of Kim Brown (Aff. Kim Brown [ECF No. 33]); and the Declaration of Eric Dinnocenzo (Decl. Eric Dinnocenzo [ECF No. 36]).  Marcus and Rodney failed to submit opposition briefs or Rule 56.1 Counterstatements or otherwise oppose Kim's Motion.

## LEGAL STANDARDS

### A. Interpleader

An interpleader action "is designed to protect stakeholders from undue harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim among many has merit." *Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 102 (E.D.N.Y. 2013) (quoting *Fid. Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 177 (S.D.N.Y. 2002)); *accord Wash. Elec. Coop. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993). Interpleader actions are generally conducted in two stages: first, the Court determines whether interpleader jurisdiction is proper and, if it is, discharges the stakeholder from liability; second, the Court adjudicates the adverse claims among the remaining parties. *N.Y. Life Ins. Co. v. Conn. Dev. Auth.*, 700 F.2d 91, 95 (2d Cir. 1983); *Mitchell*, 966 F. Supp. 2d at 102; *Locals 40, 361 & 417 Pension Fund v. McInerney*, No. 06 Civ. 5224, 2007 WL 80868, *3 (S.D.N.Y. Jan. 9, 2007). Because it has already discharged New York Life from liability and dismissed it from the action (*see* Order Discharge & Dismissal), the Court need only consider the second stage to resolve the present Motion.

### B. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 133 (2d Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no *genuine* issue of *material* fact." *Id.* at 247–48.  The moving party bears the burden of demonstrating that no genuine factual dispute exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The Court should not automatically grant summary judgment simply because a summary judgment motion is unopposed. *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014).  When a motion for summary judgment is unopposed, the Court must still "examin[e] the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial" and "that the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear*, 373 F.3d at 244 (first quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001); then quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (per curiam)).  "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'"  *Id.* (quoting *Amaker*, 274 F.3d at 681; and citing *Giannullo v. City of New York*, 322 F.3d 139, 141 (2d Cir. 2003)).  The Court may not rely solely on the movant's Rule 56.1 Statement and must ensure that "the citation to evidence in the record supports the assertion." *Id.* (citing *Giannullo*, 322 F.3d at 143 n.5); *see also Jackson*, 766 F.3d at 195 (noting that "the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed" (citing *Vt. Teddy Bear*, 373 F.3d at 244)).  Finally, the Court "the court must determine whether the legal theory of the motion is sound." *Jackson*, 766 F.3d at 194.

### C.  <u>Change of Beneficiary of an Insurance Policy</u>

As a general rule under New York law, "a change of beneficiary of an insurance plan must be accomplished in the manner specified in the policy."  *Sun Life Ins. Co. of Canada (U.S.) v. Gruber*, No. 05 Civ. 10194(NRB), 2007 WL 4457771, at *17 (S.D.N.Y. Dec.14, 2007) (citing

*Thomas v. Thomas*, 131 N.Y. 205, 30 N.E. 61 (N.Y. 1892); and *Smith v. Metro. Life Ins. Co.*, 122

Misc. 136, 203 N.Y.S. 173 (Mun. Ct. 1923), *aff'd*, 125 Misc. 670, 211 N.Y.S. 755 (Sup. Ct. 1925)),

*aff'd sub nom.*, *Sun Life Ins. Co. of Canada v. Gruber*, 334 F. App'x 355 (2d Cir. 2009).[3]   This

rule "serves the paramount goals of ensuring that life insurance proceeds are disbursed consistently

with an insured's stated intent and of preventing the courts and parties from engaging in rank

speculation regarding the wishes of the deceased."  *McCarthy v. Aetna Life Ins. Co.*, 92 N.Y.2d

436, 440, 681 N.Y.S.2d 790, 704 N.E.2d 557 (1998).

New York law, however, "do[es] not require strict performance by an insured with the

terms of a life insurance policy."  *Gruber*, 2007 WL 4457771, at *17 (citing *McCarthy*, 92 N.Y.2d

436).  Under the doctrine of substantial compliance, "intended beneficiaries of life insurance plans

[can] collect proceeds even when an insured has failed to comply with all the formalities required

to change beneficiaries."  *Id.* (citing 16 Williston on Contracts § 49:6 (4th ed.)).  Under this

doctrine, "The paramount factor in resolving the controversy is the intent of the insured.  Mere

intent, however, on the part of the insured is not enough; there must be some affirmative act or

acts on [the part of the insured] to accomplish the change."  *McCarthy*, 92 N.Y.2d at 440 (alteration

in original) (quoting *Cable v. Prudential Ins. Co.*, 89 A.D.2d 636, 636, 453 N.Y.S.2d 86 (3d Dep't

1982)).  Accordingly, "if the decedent has done all that was reasonably possible to do to show his

intention or has made every reasonable effort to comply with the policy requirements, then

---

[3] The Court applies New York law because Kim's brief "assume[s] that New York law controls this issue, and such implied consent is sufficient to establish choice of law." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) (ellipsis and internal quotation marks omitted) (quoting *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)); *see also Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 323 (S.D.N.Y. 2014) (noting that "conduct indicating the parties' consent to a given state's substantive law can consist of the cases cited and relied upon by the parties in their briefs" (collecting cases)). Indeed, Kim's application of New York law is uncontested because the Motion is unopposed. *Cf. Gilmore*, 45 F. Supp. 3d at 323 (noting that conduct indicating consent "may also consist of the parties' 'apparent decision not to raise the choice-of-law issue'" (quoting *Digital Camera Int'l Ltd. v. Antebi*, No. 11–CV–1823, 2014 WL 940723, at *3 (E.D.N.Y. Mar. 11, 2014); and citing *Li & Fung (Trading) Ltd. v. Contemporary Streetwear, LLC*, No. 11–CV–2022, 2013 WL 3757080, at *5 n. 4 (S.D.N.Y. June 6, 2013), *adopted by* 2013 WL 3744119 (S.D.N.Y. June 28, 2013))).

substantial compliance with the terms of the policy will suffice to demonstrate the policyholder's intent." *Id.* at 440–41 (internal quotation marks omitted) (collecting cases); *accord William Penn Life Ins. Co. of N.Y. v. Viscuso*, 569 F. Supp. 2d 355, 365–66 (S.D.N.Y. 2008); *Gruber*, 2007 WL 4457771, at *17–18.

<u>**DISCUSSION**</u>

Kim is entitled to the entirety of the Policy proceeds because the change of beneficiary designation from Marcus and Rodney to Kim Brown complied with the terms of the Policy.  To change a beneficiary designation under the Policy, New York Life "must be given a completed written request from the OWNER on a form satisfactory to US [New York Life]."  (Decl. Eric Dinnocenzo Ex. E, at 9.)  Laverne, the owner at the time, submitted to New York Life a beneficiary change form dated February 19, 2019, designating Kim as the full beneficiary.  (56.1 ¶¶ 10–11; Aff. Kim Brown ¶ 9; *see* Decl. Eric Dinnocenzo Ex. F.)  Upon receiving the form, New York Life changed the beneficiary designation of the Policy to Kim.  (Compl. ¶ 14; 56.1 ¶¶ 13–14; Aff. Kim Brown ¶ 9; *see* Decl. Eric Dinnocenzo Ex. K.)  There is nothing in the record to suggest that Laverne did not actually comply with the terms of the Policy, and it cannot reasonably be disputed that New York Life deemed the beneficiary change form "satisfactory" because it changed the beneficiary designation of the Policy to Kim Brown.  *See AXA Equitable Life Ins. Co. v. Bonded Life Fund, LLC*, No. 12 CV–5419 (KBF), 2013 WL 1453267, at *7 (S.D.N.Y. Apr. 9, 2013) (finding no triable issue of fact over whether claimant was entitled to policy proceeds where facts were "entirely one-sided").  Accordingly, Laverne actually complied with the Policy requirements. Kim Brown is therefore the rightful beneficiary of the Policy proceeds.

Even if Laverne somehow did not strictly comply with the Policy, her intent was clear and sufficient steps were taken to satisfy the substantial compliance standard.  Laverne told Kim she wanted to make her the beneficiary.  (56.1 ¶ 9; Aff. Kim Brown ¶ 7.)  In addition, Laverne

contacted New York Life to inquire how to change the beneficiary designation of the Policy and thereafter submitted the beneficiary change form as instructed by the New York Life representative.  (56.1 ¶¶ 7, 10–11; Aff. Kim Brown ¶¶ 7, 9; Decl. Eric Dinnocenzo Exs. F, H.) Given these actions, the Court is satisfied that Laverne did "all that was reasonably possible to do to show h[er] intention [and] ha[d] made every reasonable effort to comply with the policy requirements."  *McCarthy*, 92 N.Y.2d at 440–41 (internal quotation marks omitted) (collecting cases); *see Berger*, 2012 WL 4217795, at *9.  Because Laverne, at minimum, substantially complied with the terms of the Policy, the change of beneficiary to Kim is lawful and effective, which entitles Kim to the Policy proceeds.

The affirmative defenses asserted in Marcus's and Rodney's Answers—unclean hands, undue influence, and mental capacity—were not raised in opposition to Kim's Motion for Summary Judgment.  In any event, they are unsupported by the record and therefore cannot preclude summary judgment.  The Court addresses each in turn.

### A. <u>Unclean Hands</u>

"The doctrine of unclean hands applies when the offending party is guilty of immoral, unconscionable conduct directly related to the subject matter in litigation and which conduct injured the party seeking to invoke the doctrine."  *Ortiz v. Silver Investors*, 165 A.D.3d 1156, 1157, 87 N.Y.S.3d 50 (2d Dep't 2018) (internal quotation marks omitted) (collecting cases).  Application of the doctrine of unclean hands is appropriate "where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party."  *Viscuso*, 569 F. Supp. 2d at 362 (quoting *Estate of Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 293 (S.D.N.Y. 1996); and citing *Nat'l Distillers & Chem. Corp. v. Seyopp Corp.*, 17 N.Y.2d 12, 15–16, 267 N.Y.S.2d 193, 214 N.E.2d 361 (1966)).  The party invoking the doctrine bears the burden of proof.  *Gidatex, S.r.L. v. Campaniello Imports,*

*Ltd.*, 82 F. Supp. 2d 126, 130 (S.D.N.Y. 1999) (quoting 4 Rudolf Callman, The Law of Unfair Competition, Trademarks and Monopolies, § 22.18 (4th ed. 1997); and citing *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 13 F. Supp. 2d 430, 439 (S.D.N.Y. 1998)).

The record does not support a finding of unclean hands.  The facts set forth in Kim's Rule 56.1 Statement—which are supported by record evidence, undisputed in connection with the pending Motion, and deemed admitted by the Court—demonstrate that Laverne initiated the call to New York Life to inquire about making Kim the Policy beneficiary and that Laverne desired to make Kim the beneficiary because she took her in and cared for her.  (56.1 ¶¶ 8–9; Aff. Kim Brown ¶ 7.)  Nothing in the record reflects deceitful, unconscionable, or fraudulent conduct by Kim Brown.  *See Cohen v. Treuhold Capital Grp., LLC*, 422 B.R. 350, 381 (E.D.N.Y. 2010) ("Given the absence of any evidence of wrongful conduct . . . , the defense of unclean hands is unavailable . . . under these circumstances as a matter of law.").  While it presents troubling allegations about the relationship between Kim and Laverne, the letter by Roxanne quoted in and attached to the Complaint (*see* Compl. Ex. M), although notarized, cannot be considered in connection with the present Motion because it is unsworn and has not been properly authenticated. *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65–66 (2d Cir. 1999) (noting that "a district court should disregard an unsworn letter in ruling on a summary judgment motion" (citing *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1033 (2d Cir. 1997); and *United States v. 143–147 E. 23rd St.*, 77 F.3d 648, 657–58 (2d Cir. 1996))); *Sepanski v. Jani–King, Inc.*, No. 10–CV–518S, 2013 WL 4455412, at *2 (W.D.N.Y. Aug. 16, 2013) (finding that letters "merely signed by a notary" do not constitute competent evidence because "they are neither sworn, nor are their contents stated to be true and correct, nor are they stated under penalty of perjury"); *Byrd v. NYS Fingerlakes Developmental Disabilities Servs. O.P.W.D.D.*, No. 6:14-cv-06470(MAT), 2018 WL 3305423, at *1 (W.D.N.Y. July 5, 2018) (declining to consider in

connection with a summary judgment motion documents "not in admissible evidentiary form because none of them ha[d] been properly authenticated through deposition testimony or an affidavit from its author" (citing *GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 335 (N.D.N.Y. 2013))); *Brazier v. Hasbro, Inc.*, No. 99 Civ. 11258, 2004 WL 1497607, at *2 (S.D.N.Y. July 6, 2004) ("The submission of unsworn letters is an 'inappropriate response' to a summary judgment motion, and factual assertions made in such letters are 'properly disregarded by the court.'" (quoting *United States v. All Right, Title & Interest in Real Prop. & Appurtenances*, 77 F.3d 648, 657–58 (2d Cir. 1996))).   Accordingly, Marcus's and Rodney's unclean hands defenses fail.

## B.  Undue Influence

Under New York law, to prove undue influence, the party contesting the conveyance must show "(1) the existence and exertion of an influence; (2) the effective operation of such influence as to subvert the mind at the time the transaction occurred; and (3) the execution of the transaction that, but for undue influence, would not have happened." *Metro. Life Ins. Co. v. Bradway*, No. 10 Civ. 0254(JCF), 2011 WL 723579, at *5 (S.D.N.Y. Feb. 24, 2011) (quoting *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 273 n.27 (S.D.N.Y. 2006)).   The influence exercised must "amount[] to a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity which could not be resisted, constrained the [victim] to do that which was against his free will and desire, but which he was unable to refuse or too weak to resist." *Gruber*, 2007 WL 4457771, at *12 (quoting *In re Zirinsky*, 43 A.D.3d 946, 947–48, 841 N.Y.S.2d 637 (2d Dep't 2007)).   "A mere showing of opportunity and even of a motive to exercise undue influence does not justify a submission of that issue to the jury, unless there is in addition, evidence that such influence was actually utilized." *Medeiros v. John Alden Life Ins. Co. of N.Y.*, Nos. 89 CIV. 1278 (KMW), 88 CIV. 4399 (KMW), 1990 WL 115606, at *4 (S.D.N.Y. Aug. 10, 1990) (quoting *In re*

*Walther*, 6 N.Y.2d 49, 55, 188 N.Y.S.2d 168 (1959)).  While undue influence may be proved by circumstantial evidence, the "circumstances must lead to it not only by fair inference but as a necessary conclusion."  *Gruber*, 2007 WL 4457771, at *12 (quoting *In re Henderson's Will*, 253 A.D. 140, 145, 1 N.Y.S.2d 871 (4th Dep't 1937)).  "[T]he party contesting the conveyance has the burden to prove undue influence."  *Id.* (citing *Henderson's Will*, 253 A.D. at 145).

The record is devoid of any evidence suggesting that Laverne's changing the Policy beneficiary to Kim was the result of undue influence.  As stated in Kim's undisputed Rule 56.1 Statement and as supported by record evidence: "Kim did not ask Laverne or convince her to live with her" (56.1 ¶ 3 (citing Aff. Kim Brown ¶ 4)); "Laverne initiated the call [to New York Life] and Kim did not initiate it" (56.1 ¶ 8 (citing Aff. Kim Brown ¶ 7)); "[Laverne] expressed the desire to Kim to change the beneficiary from Marcus to her" (56.1 ¶ 15 (citing Aff. Kim Brown ¶¶ 7–11)); and "Kim did not raise the idea with Laverne nor did she ever suggest it to her or try to force her to make the beneficiary change" (56.1 ¶ 16 (citing Aff. Kim Brown ¶ 11)).  No inference—let alone firm conclusion—of undue influence can be drawn from the record.  And as explained above, because Roxanne's letter is not admissible evidence, it cannot be considered and therefore does not create an issue of fact.  Accordingly, Marcus's and Rodney's undue influence defenses—which were not presented in opposition to the pending Motion for Summary Judgment—fail.

## C. <u>Mental Capacity</u>

"In evaluating mental capacity, New York courts apply two different standards: one for contracts and one for testamentary instruments."  *Gruber*, 2007 WL 4457771, at *14 n.48.  The law is unclear with respect to which standard applies to beneficiary changes under a life insurance policy.  *Compare Bahan*, 2010 WL 3431147, at *3 (applying contract standard), *aff'd*, 441 F. App'x 21 (2d Cir. 2011), *with Gilmore*, 45 F. Supp. 3d at 324–27 (concluding that binding Second Circuit precedent requires application of probate standard).  The contract standard "is more

exacting than the testamentary standard," *Gruber*, 2007 WL 4457771, at *14 n.48; *see Gilmore*, 45 F. Supp. 3d at 326 (alteration and internal quotation marks omitted) (noting that the "capacity standard for making a will is less rigorous than the competence standard for making a contract" (collecting cases)), so an individual found competent under the contract standard is necessarily also competent under the probate standard, *see Rudolf Nureyev Dance Found. v. Noureeva-Francois*, 7 F. Supp. 2d 402, 416 (S.D.N.Y. 1998); *see also Gruber*, 2007 WL 4457771, at *14 n.48 ("[W]e consider only the contractual standard, since if Charles would be deemed capable of designating a beneficiary under the contractual standard, he would necessarily meet the less demanding testamentary standard.").

Under the contract standard a person is presumed "competent at the time of the performance of the challenged action and the burden of proving incompetence rests with the party asserting incapacity." *Genworth Life Ins. Co. of N.Y. v. Dwaileebe*, No. 6:12-cv-06330-MAT, 2017 WL 1046332, at *6 (W.D.N.Y. Mar. 20, 2017) (quoting *Liberty Life Assur. Co. of Bos. v. Bahan*, No. 09–CV–4715, 2010 WL 3431147, at *3 (S.D.N.Y. Aug. 23, 2010)).  The contract standard for a person's mental capacity is "whether the person's mind was 'so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the transaction.'" *Quinio v. Aala*, 344 F. Supp. 3d 464, 478–79 (E.D.N.Y. 2018) (quoting *Rudolf Nureyev Dance Found. v. Noureeva-Francois*, 7 F. Supp. 2d 402, 416 (S.D.N.Y. 1998)); *see Ortelere v. Teachers' Ret. Bd.*, 25 N.Y.2d 196, 202, 303 N.Y.S.2d 362 (1969).  Put differently, it must be determined "whether the party was capable of making a rational judgment concerning the transaction in question." *Quinio*, 344 F. Supp. 3d at 479 (citing *Harrison v. Grobe*, 790 F. Supp. 443, 447 (S.D.N.Y.1992), *aff'd*, 984 F.2d 594 (2d Cir. 1993)).  "[I]ncapacity must be shown at the time of the disputed transaction." *Gruber*, 2007 WL 4457771, at *17 (citing *Feiden v. Feiden*, 151 A.D.2d 889, 891, 542 N.Y.S.2d 860 (3d Dep't 1989)).

The Court considers only the contract standard and concludes that Laverne was competent under that standard.  *See Gruber*, 2007 WL 4457771, at *14 n.48.  There is no evidence in the record from which a jury could reasonably conclude that Laverne lacked mental capacity at the time she completed and submitted the beneficiary change form.  According to the affidavit testimony of Kim Brown, who was with her at the time, Laverne was "fully alert and oriented and knowingly signed the form with the awareness that I would become the beneficiary."  (Aff. Kim Brown ¶ 9; *see* 56.1 ¶ 11.)  "[Laverne] was fully-functioning from a mental standpoint.  She could lucidly engage in conversation, feed herself, and was able to watch and focus on television.  She was not impaired by medication or any other factor."  (Aff. Kim Brown ¶ 11; *see* 56.1 ¶ 17.)  This testimony is undisputed, and there is no evidence in the record to the contrary.  *See, e.g.*, *Feiden*, 151 A.D.2d at 891 (holding that the presumption of competency was not overcome because there was "no direct proof that [the individual] was not lucid, alert or oriented at the time of the transaction"); *Blatt v. Manhattan Med. Grp., P.C.*, 131 A.D.2d 48, 52, 519 N.Y.S.2d 973 (1st Dep't 1987) (rejecting incapacity defense because "all that the proof indicates is that at all times relevant herein, plaintiff comprehended the nature and consequences of his actions and made a rational judgment concerning the transaction"); *In re Kotick*, No. 2005-1202, 2014 WL 11456092, at *6 (Sur. Ct. N.Y. Cnty. Jan. 13, 2014) (concluding that "the evidence does not suggest a lack of capacity to contract" where people who conversed with the decedent on the date of execution "provided testimony as to his alertness and responsiveness").  Without any evidence to support a conclusion that Laverne was incompetent, the beneficiary change form "must be deemed to be valid and the resulting change in beneficiary to be legal."  *Bahan*, 2010 WL 3431147, at *3.

## CONCLUSION

Based on the foregoing, the Court GRANTS Defendant Kim Brown's Motion for Summary Judgment.  The Clerk of Court is respectfully requested to terminate docket entry 31, pay all money

that New York Life Insurance Company deposited with the Court in connection with this action to

Kim Brown, and close the case.


**SO ORDERED.**

Date:  **February 1, 2021**
       **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**